UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LORI ANN AGANON, | ) | Case No. 3:17CV2161 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JEFFREY HELMICK |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | REPORT AND RECOMMENDATION |

Plaintiff Lori Ann Aganon ("Aganon" or "claimant") challenges the final decision of

Defendant Commissioner of Social Security ("Commissioner") denying her applications for a

period of disability ("POD") and disability insurance benefits ("DIB") under Title II of the Social

Security Act, 42 U.S.C. §§ 416(i), 423, *et seq*. ("Act"). This court has jurisdiction pursuant to 42

U.S.C. § 405(g), and the case is before the undersigned United States Magistrate Judge pursuant

to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the

reasons set forth below, the Magistrate Judge recommends that the Commissioner's final

decision be vacated and remanded.

I.  PROCEDURAL HISTORY

On October 17, 2014, Aganon protectively filed an application for a POD and DIB,

alleging disability beginning October 19, 2009. (R. 10, Transcript ("tr."), at 13, 187-188, 209-

236.) Her application was denied initially and upon reconsideration. (R. 10, tr., at 96-114, 115-

129, 130-132.) Thereafter, Aganon filed a request for a hearing before an administrative law

judge ("ALJ"). (R. 10, tr., at 141.) The ALJ held the hearing on May 16, 2016. (R. 10, tr., at 33-95.) Aganon appeared at the hearing, was represented by counsel, and testified. (*Id.* at 35, 40-84.) A vocational expert ("VE") also attended the hearing and provided testimony. (*Id.* at 35-36, 84-94.)

On June 27, 2016, the ALJ found Aganon was not disabled. (*Id.* at 13, 27.) The Appeals Council denied Aganon's request for review, thus rendering the ALJ's decision final. (*Id.* at 1-3.) On October 12, 2017, Aganon filed a complaint challenging the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case.

## II. PERSONAL BACKGROUND INFORMATION

Aganon was born in 1974 and was 40 years old on the alleged disability onset date. (R. 10, tr., at 25, 41, 187.) Accordingly, she was considered a younger individual age 18-49 for Social Security purposes. *See* 20 C.F.R. § 404.1563. Aganon has two associate degrees and can communicate in English. (R. 10, tr., at 26, 45, 212, 214.) She had past relevant work as group work program aide, a nurse assistant, and a home attendant. (*Id.* at 85-86.)

## III. RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Aganon's brief alleging error by the ALJ. As noted earlier, Aganon applied for DIB benefits on October 17, 2014, alleging disability beginning October 19, 2009. (*Id.* at 13, 187-188.) She identified the following conditions as limiting her ability to work: "Diabetes-Type 1; Injury to right leg- compound fracture to tibia;

---

[1]  The summary of relevant medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

Injury to low back & pelvis; Injury to right calf; Injury to left arm- compound fracture; Injury to left shoulder- adhesive capsulitis; Neuropathy; Chronic pain."  (*Id.* at 213.)

Aganon was injured at work in March 2008, and had surgery for a left distal humerus fracture—an injury to the upper arm bone that connects the shoulder to the elbow. (*Id.* at 510-511.) Follow-up examination and x-rays in September 2008 showed that the bone appeared to be well-healed, but Aganon reported pain when fully extending her elbow and the doctor recommended physical therapy to improve elbow extension, as well as for her shoulder and wrist. *Id.* at 691-692.

On June 17, 2008, orthopedic surgeon Martin Skie, M.D., completed a Physician's Report of Work Ability, concerning Aganon, for the state Bureau of Workers' Compensation. (R. 10, tr., at 2386.) Dr. Skie stated that Aganon could occasionally lift or carry up to 20 pounds and could frequently lift or carry up to 10 pounds. *Id.* She was not able to push or pull, and she could only occasionally lift above her shoulders. *Id.* Dr. Skie opined that she could return to work with the restriction that she could not use her left arm. *Id.*

Dr. Skie noted, during an October 7, 2008 visit, that x-rays showed Aganon's fracture "near healed," although she still lacked full extension of her left elbow. (*Id.* at 1437, 875 (duplicate).) Aganon was without pain in the range of motion of her elbow. *Id.* Physical examination of her left arm revealed no shoulder impingement, but she did have tenderness with deep palpitation of the fracture site. *Id.* Dr. Skie's treatment plan was conservative, with physical therapy and an anti-inflammatory prescription. *Id.* At an April 22, 2009 follow-up visit, Dr. Skie reported Aganon was doing well with physical therapy and work rehabilitation training, and he cleared her to return to work with no restrictions. *Id.* at 1427, 1094.

3

Orthopedist Richard H. Deerhake, M.D. conducted an Independent Medical Evaluation for the state Bureau of Workers' Compensation on October 25, 2011. (R. 10, tr., at 1259-1263.) Dr. Deerhake noted that Aganon had previously been determined to have "an 11% upper extremity impairment or a 7% whole person impairment," and he determined that there was no increase in her impairment with the addition of biceps tendonitis over her already existing adhesive capsulitis. *Id.* at 1262. The doctor concluded that, since forward flexion had actually improved and internal rotation had minor change, "there should be no additional impairment for her biceps tendonitis since this is basically covered under her adhesive capsulitis." *Id.*[2]

On January 20, 2012, Aganon visited internist Samer Obri, M.D., for treatment of a sinus infection. (R. 10, tr., at 1593-1596.) She reported "doing poorly" controlling her diabetes since her previous visit. *Id.* at 1593. The doctor noted that diabetic complications included nephropathy, peripheral neuropathy and retinopathy, but no peripheral vascular disease or coronary artery disease. *Id.* On physical examination, Aganon had a "full range of motion of all joints in the upper and lower extremities." *Id.* at 1595. Her gait was normal. *Id.* Dr. Obri recommended increased exercise, a well-balanced diet, and that the claimant take a blood sugar reading four times per day. *Id.* at 1596.

Aganon presented to orthopedist Nabil Ebraheim, M.D., on March 15, 2012, for left shoulder and elbow pain. (R. 10, tr., at 1395-1396.) Aganon complained of left shoulder pain, but her primary complaint was sharp pain and numbness that radiates from the elbow down to the

---

[2] The ALJ's decision indicated that he considered "the objective clinical and diagnostic evidence used by the physician to come to that conclusion[,]" although the ALJ noted a different standard applied when considering criteria to determine disability under state workers' compensation law. *Id*. at 23-24.

hand. *Id.* at 1395. The doctor recommended an EMG of the left arm, and a follow-up appointment. *Id.* at 1395-1396. Dr. Ebraheim stated Aganon "may now have some postsurgical scarring and adhesion formation that is significantly causing compression of the nerve at the elbow." *Id.* at 1396.

Aganon began treating with chiropractor Megan Detray, D.C., on March 20, 2012. (R. 10, tr., at 3194-3197.) She reported neck pain and shoulder pain on her left side, lower back pain on the right side, hip pain, and pain in both feet. *Id.* at 3194. The chiropractor observed reduced range of motion ("ROM") on the left cervical spine and with extension, and reduced ROM on flexion of the lumbar spine. *Id.* at 3195. Aganon reported pain on lateral cervical motion, and on lumbar flexion. *Id.* The chiropractor's recommendations included stretching and chiropractic treatment over the following nine weeks. *Id.* at 3197.

During appointments in September and October 2012, Dr. Obri observed normal gait and mobility, and advised Aganon that she needed to exercise more and improve her diet. (R. 10, tr., at 1579-1580, 1583-1584.) Dr. Obri noted Aganon was right hand dominant. *Id.* at 1581; *see also* tr., at 42 (hrg. testimony). At the October visit, Dr. Obri found Aganon had swelling in her back, with limited and painful flexion. *Id.* at 1579. At a November follow-up, Dr. Obri noted continued lower back pain and neck strain. *Id.* at 1573-1576. The doctor stated "there is poor compliance" with her treatment regime. *Id.* at 1573. He prescribed medication and recommended that Aganon discontinue physical therapy and occupational therapy due to pain. *Id.* at 1576.

Aganon presented to Dr. Ebraheim on December 17, 2012, for a follow-up on the EMG of her left arm. (R. 10, tr., at 1389-1391.) The July 2012 EMG showed ulnar nerve neuropathy at the elbow and carpal tunnel syndrome ("CTS"), "both to a moderate degree," but Aganon denied

any current CTS symptoms. *Id.* at 1389, 1392. She reported continued pain in her left elbow, radiating to her hand. *Id.* at 1389. Her ROM in the elbow showed abnormal flexion and extension. *Id.* at 1390. Dr. Ebraheim assessed that Aganon had no physical disability or impaired mobility, although he found her "at risk for falls" with a weak or unsteady gait. *Id.* Her grip strength was 5/5. *Id.*

Aganon continued to treat with Dr. Obri throughout 2013 and 2014 for her diabetes. At a January 2, 2013 routine follow-up, Dr. Obri noted that Aganon's issues included obesity and a sedentary lifestyle, as well as non-compliance with her treatment plan. (R. 10, tr., at 1563.) At that visit, Aganon had muscle spasms, and her flexion was restricted and painful. *Id.* at 1565. The doctor observed that the claimant's gait was normal, and she had no mobility restrictions. *Id.* At a visit several weeks later, on February 6, Aganon complained of sinusitis, but muscle spasms were not mentioned. *Id.* at 1559. Again, the claimant's gait was normal, and she had no mobility restrictions. *Id.* at 1561.

During subsequent visits throughout 2013 and into 2014, Dr. Obri consistently noted that Aganon's gait was normal and she had no mobility restrictions. (R. 10, tr., at 1531, 1537, 1543, 1548, 1553, 1558.) On December 11, 2013, Aganon reported that her toes were swollen, and the doctor observed decreased sensation. *Id.* at 1548. This problem continued into the year 2014. *Id.* at 1531, 1537, 1543. Dr. Obri frequently advised Aganon to improve her diet, exercise, lose weight, and quit smoking. *See, e.g.*, R. 10, tr., at 1537-1538, 1548. The doctor consistently noted Aganon's non-compliance with her treatment plan. *See, e.g.*, R. 10, tr., at 1528, 1544, 1563. Dr. Obri assessed that Aganon had a poor prognosis due to non-compliance with treatment. *Id.* at 1528, 1539, 1544, 1549.

6

On May 14, 2014, the chiropractor Dr. Detray observed that Aganon's cervical spine ROM was within normal limits, although Aganon had pain on extension. (R. 10, tr., at 3147.) The lumbar spine ROM was reduced on flexion. *Id.* The chiropractor recommended further chiropractic treatment over the following two weeks, which would lead to "marked improvement." *Id.* at 3148. On January 27, 2015, the chiropractor diagnosed adhesive capsulitis of the left shoulder. *Id.* at 2817-2818. She recommended physical therapy, and an MRI of the lumbar spine. *Id.* at 2818.

On April 4, 2016, Dr. Obri completed a residual functional capacity assessment form on Aganon. (R. 10, tr., at 2820-2824.) The assessment concerned "the limitations that the claimant would have had on or before December 31, 2014." *Id.* at 2820. Dr. Obri diagnosed uncontrolled Type 1 diabetes mellitus, diabetic neuropathy, diabetic retinopathy, back pain, and depression. *Id.* Clinical findings included elevated HbA1c (glycosylated hemoglobin) and neuropathy. *Id.* Dr. Obri indicated he was treating Aganon with medication and her prognosis was fair. *Id.* at 2821.

Dr. Obri assessed that Aganon could sit for two hours at one time, but also indicated she could sit only one hour total during an eight-hour workday. (R. 10, tr., at 2821.) She could stand for 10-15 minutes at one time, and 10-15 minutes total during an eight-hour workday; she could walk for 30 minutes at one time, and 30 minutes total during an eight-hour workday. *Id.* Dr. Obri did not indicate that Aganon needed a sit/stand option. *Id.* The doctor stated that, with the above restrictions, Aganon could not complete an 8-hour workday on a sustained, routine basis, due to pain. *Id.* at 2822. The doctor indicated that Aganon would not require "periods of recumbency"

7

during the workday as a result of her impairments, and would not require her legs to be elevated. *Id.*

Dr. Obri assessed that Aganon could frequently lift up to twenty pounds, could occasionally lift up to 25 pounds, and she could frequently carry up to 25 pounds. (R. 10, tr., at 2822-2823.) The doctor indicated that the claimant could not use her left hand for gross or fine manipulation, could not use her left arm for pushing and pulling arm controls, but she could do so with her right hand and arm. *Id.* at 2823. Dr. Obri assessed that Aganon could not use her feet for repetitive movement, such as pushing or pulling of leg controls. *Id.* The doctor marked that the claimant is frequently able to bend and to reach with her right arm. *Id.* She can occasionally squat, but never crawl or climb. *Id.* Dr. Obri indicated that Aganon had mild restrictions driving an automobile and with exposure to marked temperature and humidity changes. *Id.* Dr. Obri opined that "patient is probably unable to sustain job." *Id.*

State agency medical consultant Venkatachala Sreenivas, M.D., completed a physical residual functional capacity assessment for Aganon on February 4, 2015, for the date last insured on December 31, 2014. (R. 10, tr., at 107-109, *see also* 113.) Dr. Sreenivas assessed a range of light exertion, with the ability to stand or walk for a total of six hours, and to sit for about six hours, of an 8-hour workday. (R. 10, tr., at 107.) The claimant's ability to push or pull was limited to occasionally in both legs, due to diabetic neuropathy. *Id.* The doctor noted she can frequently climb ramps and stairs, but can never climb ladders, ropes, or scaffolds, due to diabetic neuropathy and obesity. *Id.* at 107-108. She can frequently balance, stoop, kneel, crouch, and crawl. *Id.* Dr. Sreenivas noted that Aganon must avoid all exposure to hazards, particularly unprotected heights. *Id.* at 108. In addition, the doctor observed that the "documentation of

8

clinical neuropathy was on March 28, 2014, which will be considered as AOD [alleged onset date]." *Id.* at 109.

On reconsideration, state agency medical consultant Elizabeth Das, M.D., completed a physical RFC assessment for Aganon on April 27, 2015. (R. 10, tr., at 121-124, *see also* 127-128.) Dr. Das agreed with Dr. Sreenivas, in part, assessing a range of light exertion, with the ability to stand or walk for a total of six hours, and to sit for about six hours, of an 8-hour workday, and finding claimant's ability to push or pull was limited to occasionally in both legs, due to diabetic neuropathy. (R. 10, tr., at 122.) Dr. Das also noted a normal gait, and diminished sensation in claimant's toes and feet. *Id.* She indicated that EMG confirmed mild neuropathy in both legs, although cervical spine and lumbar spine x-rays were normal. *Id.*

Dr. Das assessed different postural limitations: Aganon can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds, due to diabetic neuropathy and obesity. *Id.* at 122. She can frequently balance and occasionally stoop, kneel, crouch, and crawl. *Id.* In addition, Dr. Das assessed manipulative limitations, indicating that Aganon's overhead reaching with her left arm was limited to occasional, and handling and fingering with her left hand was limited to occasional. *Id.* at 122-123. The doctor assessed that Aganon must avoid concentrated exposure to fumes, odors, dusts, gases, etc., due to a history of bronchitis; she must avoid all exposure to hazards, particularly unprotected heights; and she should not drive commercially. *Id.* at 123. Dr. Das noted that the documentation of clinical neuropathy was on March 28, 2014, and there was no evidence of a low back or hip injury as alleged. *Id.* at 124.

IV.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in the June 27, 2016

decision:

1.  The claimant last met the insured status requirements of the Social Security
Act on December 31, 2014.

2.  The claimant did not engage in substantial gainful activity during the period
from her alleged onset date of October 19, 2009 through her date last insured of
December 31, 2014 (20 C.F.R. 404.1571 *et seq.*).

3.  Through the date of last insured, the claimant had the following severe
impairments: obesity with a BMI of 39.2; diabetes mellitus;  peripheral
neuropathy in the upper and lower extremities; carpal tunnel syndrome; and an
affective disorder/major depression (20 C.F.R. 404.1520(c)).

4.  Through the date last insured, the claimant did not have an impairment or
combination of impairments that met or medically equaled the severity of one of
the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.
404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, I find that, through the date last
insured, the claimant had the residual functional capacity to perform light work as
defined in  20 CFR 404.1567(b) except that the claimant:  can occasionally
operate foot controls; occasionally climb ramps and stairs; never climb ladders,
ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl;
frequently reach overhead with the left upper extremity; frequently handle and
finger with the left upper extremity; must avoid concentrated exposure to
pulmonary irritants; must avoid all exposure to hazards; can understand,
remember, and carry out simple instructions; can perform simple, routine and
repetitive tasks, but not at a production rate pace, such as an assembly line; can
adapt to routine changes in the workplace that are infrequent and easily explained;
and must be able to alternate between sitting and standing every 30 minutes.

6.  Through the date last insured, the claimant was unable to perform any past
relevant work (20 C.F.R. 404.1565).

7.  The claimant was born on [***] 1974, and was 40 years old, which is defined
as a younger individual age 18-49, on the date last insured (20 C.F.R. 404.1563).

8.  The claimant has at least a high school education and is able to communicate
in English (20 C.F.R. 404.1564).

10

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.  Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. 404.1569 and 404.1569(a)).

11.  The claimant was not under a disability, as defined in the Social Security Act, at any time from October 19, 2009, the alleged onset date, through December 31, 2014, the date last insured (20 C.F.R. 404.1520(g)).

(R. 10, tr., at 15, 16, 19, 25, 26, 27.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. § 404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20

11

C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to determining whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the

case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII.  ANALYSIS

Aganon frames the two issues for the court's review as follows:

1.  Did Defendant fail to provide "good reasons" for rejection of Plaintiff's treating physician, Dr. Obri's opinion in his retrospective questionnaire and RFC, in not giving such opinion controlling weight or at a minimum, deference, and not correctly analyzing weight to accord such opinion as required by 20 C.F.R. § 404.1527(d)(2)-(6), Social Security Rulings 96-2p, 96-4p, and 96-6p, and Sixth Circuit case law, for cases filed prior to 3/27/17, thereby resulting in a decision not based on substantial evidence?

2.  Did the ALJ's hypothetical adopted as Finding No. 5, contain inaccurate manipulative limitations from which [sic] VE testimony, regarding alternate jobs to meet Defendant's 5th Step Sequential Evaluation, resulting in a decision not supported by substantial evidence?

(R. 17, PageID #: 3283.)

### A.  Treating Physician Opinion

Aganon contends that the ALJ failed to provide "good reasons" for rejecting the opinion from her treating physician, Dr. Obri, and erred by not giving that opinion deference or controlling weight. She argues that the ALJ failed to analyze Dr. Obri's opinion in accordance with 20 C.F.R. § 404.1527(d)(2)-(6), SSRs 96-2p, 96-4p, and 96-6p, and applicable Sixth Circuit case law.  (R. 17, PageID #: 3298-3301.)

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[3] *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often well-suited to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The treating physician doctrine requires opinions from treating physicians to be given controlling weight where the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. In other words, treating physicians' opinions are only given deference when supported by objective medical evidence. *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s). *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3. Those good reasons must be supported by evidence in the case record and must be

---

[3] Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017. 82 Fed. Reg. 5844-5884 (Jan. 18, 2017). Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision.

14

sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407; *Winning v. Commissioner*, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p).

Moreover, an ALJ must evaluate each medical opinion in the record. *Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007); 20 C.F.R. §§ 404.1527(c), 416.927(c). State agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must consider their evidence. 20 C.F.R. §§ 404.1513a(b)(1); 404.1527(e), 416.913a, 416.927(e). Although the ALJ generally accords more weight to a treating source over a non-examining source, the ALJ is not prohibited from adopting the findings of a non-examining source. *See generally Ealy v. Commissioner*, 594 F.3d 504, 514-515 (6th Cir. 2010); *Smith*, 482 F.3d at 875.

The ALJ, in this case, addressed Dr. Obri's opinion as follows:

> In April 2016, Sam Obri, M.D., opined that the claimant could sit for one hour total in an eight-hour day, and [stand] for 15 minutes total in an eight-hour day, and walk for 30 minutes total in an eight-hour day. Dr. Obri opined that the claimant could occasionally lift or carry up to 25 pounds, frequently life or carry up to 20 pounds, and is "probably unable to sustain a job." (Exhibit 15F). I have given Dr. Obri's opinion little weight as it is after the claimant's date last insured, is internally inconsistent, and not supported by the medical record as a whole.

(R. 10, tr., at 24.) Aganon argues that the ALJ should have given controlling weight to treating physician Dr. Obri's opinion and contends the ALJ's statement giving Dr. Obri's opinion "little weight" falls short of providing good reasons for discounting it. (R. 17, PageID #: 3298-3299.)

The ALJ did not address, or even acknowledge, the manipulative limitations Dr. Obri assessed in the Residual Functional Capacity Assessment Form. (R. 10, tr., at 24, 2823.) Aganon points out that Dr. Obri found that claimant could not use her left hand for gross and fine

manipulation, or her left arm for pushing and pulling arm controls[4] (R. 10, tr., at 2823), whereas the ALJ's RFC found that Aganon could "frequently reach overhead with the left upper extremity; [and] frequently handle and finger with the left upper extremity" (*id.* at 19). Dr. Obri also found that Aganon could not use either of her feet for pushing and pulling of leg controls, whereas the RFC found that Aganon could "occasionally operate foot controls." *Id.*

The Commissioner, as an initial matter, does not contest that Dr. Obri was Aganon's treating physician. *See, e.g.* R. 18, PageID # 3359. The ALJ's decision, however, did not identify the doctor as a treating physician. Although that alone is not dispositive, the ALJ's decision also does not address the length of Dr. Obri's treatment relationship, which spanned several years, or the frequency of examination—examinations occurred several times per year, as evidenced by the medical record discussed *supra*. *See Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 1527(c)(2), (c)(2)(i); *see generally* R. 10, tr., at 2820 (length of treatment relationship: "many years"). In addition, the ALJ's decision did not consider the nature and extent of the treatment relationship. *See Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 1527(c)(2), (c)(2)(ii).

Further, the ALJ gave Dr. Obri's opinion "little weight" in part because the opinion was rendered "after the claimant's date last insured." (R. 10, tr., at 24.) While that statement is facially correct, it is inaccurate when considering the full context in which Dr. Obri offered the opinion. The RFC Assessment Form specifically states that the doctor is offering his opinion "as to the limitations that the claimant would have had on or before December 31, 2014," which is

---

[4] Dr. Obri indicated that Aganon could frequently reach with her right arm, but did not indicate whether there were any reaching restrictions for the left. *Id.* at 2823.

the relevant timeframe here. (R. 10, tr., at 2820.) It is apparent the ALJ's decision misconstrued the relevant timeframe for Dr. Obri's opinion. *See generally* R. 10, tr., at 24.

The ALJ did briefly address two of the relevant factors from 20 C.F.R. section 1527 in his statement that Dr. Obri's opinion was "internally inconsistent, and not supported by the medical record as a whole." (R. 10, tr., at 24; *see generally Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 1527(c)(3) (supportability) and (c)(4) (consistency).) The ALJ, however, did not provide any support, either through citation to the record or discussion of the medical evidence of record, to enable the court to perform a review of those assertions.[5] *See, e.g., Shields v. Commissioner*, No. 17-6091, 2018 WL 2193136, at *9 (6th Cir. May 14, 2018) (must be some effort to identify specific discrepancies)*; Gayheart*, 710 F.3d at 377 (ALJ did not identify substantial evidence that was inconsistent with doctor's opinion); *Friend v. Commissioner*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. Apr. 28, 2010) (not "sufficiently specific" where ALJ neither identifies "objective clinical findings" at issue nor discusses their inconsistency with medical opinion). Here, the ALJ failed to identify specific evidence that undermined the treating physician's opinion. *Lancaster v. Commissioner*, No. 06-5859, 2007 WL 1228667, at *14 (6th Cir. Apr. 26, 2007).

---

[5]  Although the Commissioner's filing endeavors to supplement the ALJ's decision with supporting argument and citations to record evidence—that are absent from the ALJ's discussion of Dr. Obri's opinion—(R. 18, PageID #: 3359-3360), this court is required to consider the decision "solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *Simpson v. Commissioner*, No. 08-3651, 2009 WL 2628355, at *10 (6th Cir. Aug. 27, 2009); *see also Johnson v. Commissioner*, 193 F. Supp. 3d 836, 847 (N.D. Ohio 2016) (citing *Berryhill v. Shalala*, 4 F.3d 993 (6th Cir. 1993).

The Commissioner asserts that the ALJ "need not restate specific inconsistencies in support of his analysis of the treating physician's opinion." (R. 18, PageID #: 3360, citing *Crum v. Commissioner*, 660 Fed. Appx. 449, 457 (6th Cir. 2016).) The Sixth Circuit in *Crum*, however, addressed an ALJ's decision that was more complete than that which is before this court. There, the court noted:

> The ALJ followed step by step the factors for determining what weight to give that [treating physician's] opinion. *See* 20 C.F.R. § 404.1527(c)(2). At each step she explained her reasons for not giving it controlling weight, both in the paragraph in which she directly discussed [the treating physician's] opinion and elsewhere in her decision.

*Crum*, 660 Fed. Appx. at 456. The ALJ's decision here, however, provided a cursory statement rejecting the treating physician's opinion that lacks record citations and sufficient explanation to permit a meaningful judicial review.

By contrast to the "little weight" accorded to Dr. Obri's opinion, the ALJ gave "great weight" to the opinion(s) of the state agency reviewing physicians. (R. 10, tr., at 24-25, citing Exhibits 1A, 3A.) The ALJ concluded that those opinions were "consistent with the medical record as a whole," and the RFC limitations for light exertional level work with no climbing of ladders, ropes, or scaffolds. (R. 10, tr., at 24-25, citing Exhibits 1A, 3A.) The opinions of Dr. Sreenivas and Dr. Das, which the ALJ characterizes as "consistent with the medical record as a whole," are consistent in part with Dr. Obri's opinion, insofar as the manipulative limitations at issue are concerned. For example, Dr. Obri found that claimant could not use her left hand for gross and fine manipulation, or her left arm for pushing and pulling arm controls. (R. 10, tr., at 2823.) Dr. Das assessed that Aganon's overhead reaching with her left arm was limited, and handling and fingering with her left hand was limited. *Id.* at 122-123.

18

It is not this court's role to resolve conflicts in the evidence, *Wright*, 321 F.3d at 614; *Garner*, 745 F.2d at 387, but rather it is the ALJ's role to provide good reasons, sufficiently specific and supported by evidence in the record, for the weight assigned to the treating physician's opinion. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407. The ALJ did not do so here, and the decision should be remanded for a reconsideration, or at least a more thorough explanation, of the weight assigned to treating physician Dr. Obri's opinion.

Where the ALJ does not provide good reasons on the record for according less than controlling weight to a treating physician's opinion, the court must reverse and remand, unless the error is harmless. *Blakley*, 581 F.3d at 409 (citing *Wilson*, 378 F.3d at 547). The error here is not harmless. For example, the inadequate analysis considering the manipulative limitations Dr. Obri assessed is consequential because the VE testified that limited manual dexterity would impact the type and number of jobs available. (R. 10, tr., at 90-92.) Because the ALJ's decision does not satisfy the testing physician rule, it should be remanded.

### B.  Vocational Expert Testimony

Aganon also argues that the ALJ's decision is not supported by substantial evidence because the RFC, in finding number 5 above, did not reflect claimant's manipulative limitations. During the underlying administrative hearing, the ALJ received Aganon's testimony, her medical record, and asked the VE a series of hypothetical questions to determine what jobs someone with the above RFC could perform. The VE identified a substantial number of alternate jobs in the national economy, but claimant contends that testimony cannot serve as a proper basis for the ALJ's decision because the hypothetical questioning included inadequate RFC manipulative limitations. (R. 17, PageID #: 3283, 3301-3311.)

19

Aganon contends that, despite the ALJ's determination that she had the severe impairment of carpal tunnel syndrome, the RFC finding indicated that she could "frequently reach overhead with the left upper extremity; [and] frequently handle and finger with the left upper extremity." (R. 17, PageID #: 3302, quoting R. 10, tr., at 19.) The RFC is deficient, according to Aganon, because it does not include any "significant limitation" on her ability to handle and finger (gross and fine manipulation) with the left hand. *Id.*

The relevant issue here, as framed by Aganon, is whether the ALJ's hypothetical questioning contained "inaccurate manipulative limitations," which the VE then relied upon. (R. 17, PageID #: 3283, 3301, 3311.)[6] The Sixth Circuit has addressed this issue as follows:

> "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). Hypothetical questions, however, need only incorporate those limitations which the ALJ has accepted as credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

*Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *9 (6th Cir. March 15, 2011); *see also Pasco v. Commissioner of Social Sec.*, No. 03-4358, 2005 WL 1506343, at *14 (6th Cir. June 23, 2005); *Varley v. Secretary of HHS*, 820 F.2d 777, 779 (6th Cir. 1987) (citing cases). Moreover, the hypothetical questioning need not list the claimant's medical conditions; it need only reference the claimant's limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004) (citing *Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001)). Where the ALJ relies on a

---

[6] The parties, in addition, dispute whether claimant was right-handed and whether claimant had difficulties with both hands. (R. 17, PageID #: 3302-3304; R. 18, PageID #: 3361-3362.) This court's role, however, is not to resolve conflicts in the evidence. *Wright*, 321 F.3d at 614; *Garner*, 745 F.2d at 387.

hypothetical questioning that does not adequately account for all the claimant's supported limitations, a finding of disability is not based on substantial evidence. *Diaz v. Berryhill*, No. 1:17CV1602, 2018 WL 2338864, at *12 (N.D. Ohio May 8, 2018), *adopted by* 2018 WL 2336806 (N.D. Ohio May 23, 2018) (citing cases).

As discussed above, the ALJ did not address treating physician Dr. Obri's finding of manipulative limitations, namely that Aganon could not use her left hand for gross and fine manipulation, could not use her left arm for pushing and pulling arm controls, and could not use either of her feet for pushing and pulling of leg controls. (R. 10, tr., at 2823.) Dr. Obri's finding was partially supported by state agency medical consultant, Dr. Das, who also assessed manipulative limitations that included Aganon's overhead reaching with her left arm was limited to occasional, and her handling and fingering with her left hand was limited to occasional. *Id.* at 122-123.

The medical evidence of record and Aganon's statements provide support for Dr. Obri's and Dr. Das' medical opinions, which determined that she had manipulative limitations, even though a claimant's statements concerning pain or other symptoms is, alone, not sufficient to establish disability. *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)). Although the parties have identified conflicting evidence, this court does not resolve such conflicts,[7] even though there is record evidence supporting the findings by Dr. Obri and Dr. Das. The earliest mention of problems with Aganon's left arm is the March 2008 work-related injury resulting in a left distal humerus fracture. (R. 10, tr., at 510-511.) Dr. Deerhake noted upper extremity impairments (biceps tendonitis and a previously existing adhesive capsulitis) in October 2011,

---

[7] *Wright*, 321 F.3d at 614; *Garner*, 745 F.2d at 387.

and chiropractor Dr. Detray also diagnosed adhesive capsulitis in January 2015. *Id.* at 1262, 2817-2818. Aganon complained of left shoulder and elbow pain to orthopedist Dr. Ebraheim in March 2012, and her primary complaint was sharp pain and numbness that radiated from the elbow down to the hand. *Id.* at 1395-1396. A July 2012 EMG showed ulnar nerve neuropathy at the elbow and carpal tunnel syndrome, and in December 2012 Aganon continued to have pain in her left elbow that radiated to her hand. *Id.* at 1389, 1392.

The ALJ need only incorporate those limitations which the ALJ has accepted as credible into his hypothetical questions. *Park*, 2011 WL 867214, at *9 (citing *Casey*, 987 F.2d at 1235). But the ALJ's decision does not indicate that he gave any consideration to the more restricted manipulative limitations opined by Dr. Obri and Dr. Das. *See, e.g.*, R. 10, tr., at 86 (asking VE about frequent handling and fingering with left hand); 2823 (Dr. Obri: cannot use left hand for gross or fine manipulation); *see also* 122 (Dr. Das: limited left hand gross or fine manipulation). The ALJ's hypothetical to the VE (and the ALJ's RFC) omitted the manipulative restrictions opined by Dr. Obri and Dr. Das. Considering the medical evidence in the record, the court cannot determine whether the ALJ's hypothetical adequately incorporated Aganon's limitations. Without the ALJ explaining why he did not find it necessary to include these manipulative limitations, the court is left to speculate. Accordingly, the VE's testimony does not constitute substantial evidence to support the ALJ's decision at Step Five and the court recommends remanding the case.

## VIII.  CONCLUSION

The undersigned recommends that the Commissioner's decision be vacated and remanded for the aforementioned reasons.


s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge


Date:  December 20, 2018



## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).